UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cr-20306-DPG/EGT

UNITED STATES OF AMERICA

v.

LUIS FERNANDO VUTEFF,

      Defendant.

_____/

### GOVERNMENT'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION TO DISQUALIFY COUNSEL EDWARD ROBERT SHOHAT AND JONES WALKER

      The United States, by and through its undersigned attorneys, hereby files this supplemental briefing in support of the United States' motion to disqualify counsel Edward Robert Shohat and Jones Walker (collectively referred to as "Mr. Shohat" for simplicity)[1] as to defendant Luis Fernando Vuteff ("Vuteff" or "Defendant") (hereinafter referred to as the "Motion to Disqualify"). Vuteff DE 37.[2] Mr. Shohat has an actual conflict of interest based on his prior attorney-client relationship with Witness 1, and through a joint defense agreement with Witness 2 ("Mr. Ledo Nass"). Because of that conflict, and because neither Witness 1 nor Mr. Ledo Nass have waived that conflict, Mr. Shohat should be disqualified from representing Vuteff in this criminal matter.

### FACTUAL BACKGROUND

      The following facts were established or are undisputed after three evidentiary hearings

---

[1] There is no argument that the conflict can be cured by having Jones Walker represent Vuteff without Mr. Shohat.

[2] Because the Government cites to multiple criminal cases pending in this district, to distinguish between docket entries in the various cases, it identifies the DE numbers by the lead Defendant— "Vuteff" here, "Convit" for the original case, and "Ledo" for the Ledo Nass case.

concerning the Motion to Disqualify.  In or around August 2018, Witness 1 retained Mr. Shohat as criminal defense counsel concerning the criminal complaint and indictment in criminal case *United States v. Convit Guruceaga, et al.*, 18-cr-20685-WILLIAMS (S.D. Fla. Aug. 16, 2018) and any related criminal investigations.  That case charged several defendants based on allegations of money laundering connected to a foreign bribery scheme to obtain a loan contract with the Venezuelan state-run oil company Petróleos de Venezuela, S.A. ("PDVSA") in late 2014 (hereinafter the "PDVSA bribery loan scheme").  *United States v. Convit Guruceaga, et al.*, 18-cr-20685-WILLIAMS (S.D. Fla. Aug. 16, 2018), Convit DE 3 and 19; [Vuteff DE 61 and 62]. Witness 1 and Mr. Ledo Nass were identified in the complaint—as was Vuteff (all anonymously). Also, in or around August 2018, Mr. Ledo Nass retained criminal defense counsel concerning the same criminal complaint and indictment and any related criminal investigations.  *Id.*  Sometime after August 2018, Witness 1 and Mr. Ledo Nass—and their respective counsel including Mr. Shohat—entered into a joint defense agreement (the "Witness 1/Ledo JDA") concerning the criminal complaint and indictment in the above-referenced criminal case and any related criminal investigations.  Vuteff DE 61 and 62.  Vuteff was not a participant or member of the Witness 1/Ledo JDA.

Pursuant to the Witness 1/Ledo JDA, Mr. Ledo Nass passed confidential information to Witness 1 and Mr. Shohat, both by email and orally.  Evid. Hr'g Tr. 112:16-25 (Jan. 10, 2023); Evid. Hr'g Tr. 4:2-6; 8:18-9:6 (May 2, 2023).

At some point in time, Witness 1 and Mr. Ledo Nass retained other criminal defense counsel to represent them concerning the criminal complaint and indictment in *United States v. Convit Guruceaga, et al.*, 18-cr-20685-WILLIAMS and any related criminal investigations.[3]

---

[3] There is no evidence that Mr. Shohat's representation of Witness 1 actually has been terminated.

Vuteff DE 61 and 62.  That criminal case concerns the PDVSA bribery loan scheme and is substantially related to this criminal case against Vuteff.  Evid. Hr'g Tr. 10:17-22 (Jan. 10, 2023); *see also* Vuteff Complaint, Vuteff DE 3.

On February 24, 2023, Mr. Ledo Nass was charged by information with a money laundering criminal offense involving the PDVSA bribery loan scheme identified in both complaints.  *United States v. Ledo Nass*, 23-cr-20089-WILLIAMS (S.D. Fla. Feb. 24, 2023), Ledo DE 1.  On March 29, 2023, Mr. Ledo Nass pleaded guilty to that information and agreed to cooperate with the United States government, including agreeing to testify at any hearings or trials.  Ledo DE 13 and 15, ¶ 8.  Mr. Ledo Nass will be a witness at Vuteff's criminal trial, if Vuteff chooses to go to trial on the indictment returned against him.

On July 14, 2022, Mr. Shohat entered a temporary appearance in this case as counsel for Vuteff, along with two other lawyers from his firm Jones Walker.  Vuteff DE 12.  On October 24, 2022, Mr. Shohat filed an appearance for trial only.  Vuteff DE 35.  Also on October 24, 2022, the government moved to disqualify Mr. Shohat as counsel for Vuteff.  Vuteff DE 37.

Neither Witness 1 nor Mr. Ledo Nass waived any conflict of interest to allow Mr. Shohat to represent Vuteff after Mr. Shohat's prior (or ongoing) representation of Witness 1, and Mr. Shohat's receipt of confidential information from Mr. Ledo Nass as a participant in the Witness 1/Ledo JDA.  Vuteff DE 61 and 62.  In addition, Witness 1 has not consented to Mr. Shohat revealing information relating to Mr. Shohat's representation of Witness 1.  *Id.*  Mr. Ledo Nass also has not consented to Mr. Shohat revealing information that Mr. Shohat learned as a member of the Witness 1/Ledo JDA.  *Id.*

This criminal matter involving Vuteff is substantially related to criminal cases *United States v. Convit Guruceaga, et al.*, 18-cr-20685-WILLIAMS and *United States v. Ledo Nass*, 23-

cr-20089-WILLIAMS.  Evid. Hr'g Tr. 10:17-24 (Jan. 10, 2023).

## LEGAL BACKGROUND

The United States acknowledges that "[t]he right to conflict-free counsel is included in the Sixth Amendment right to effective assistance of counsel." *United States v. Gutierrez*, 2010 WL 3769448, at *2 (S.D. Fla. Aug. 3, 2010) (citing *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir. 1989)).  "The sixth amendment right to counsel is perhaps the most precious of constitutional rights a criminal defendant possesses.  It ensures that an accused has an advocate, skilled in the art of trial advocacy, to test the evidence offered and challenge the allegations levied by the government." *United States v. Urbana*, 770 F. Supp. 1552, 1555 (S.D. Fla. 1991).  However, "a court must balance the right to counsel of defendant's choice with the defendant's right to a conflict-free attorney." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994); *United States v. Kaley*, 2014 WL 3734679, at *5 (S.D. Fla. June 19, 2014) (citing *Wheat v. United States*, 486 U.S. 153, 162–63 (1988)).

While a defendant has a right to be represented by counsel of choice, this right is not absolute.  "The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial." *Ross*, 33 F.3d at 1522-23.  "If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest." *Id.* Courts have the discretion to disqualify attorneys despite the Sixth Amendment rights of a

defendant because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 162.

"[A] joint defense agreement can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue." *All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552, at *6 (N.D. Cal. Dec. 18, 2008), *order clarified*, 2009 WL 292536 (N.D. Cal. Feb. 5, 2009). "The joint defense privilege is an extension of the attorney-client privilege.… This privilege also can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue…" *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000) (counsel for defendant in a joint defense sought to withdraw after former JDA member pleaded guilty and testified, recognizing that his prior knowlege of confidential information would hamper his cross examination).[4]

The Fifth Circuit has stated that attorneys in a joint-defense agreement are restricted from proceeding against other members of the joint-defense agreement in substantially related matters:

> Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was

---

[4] There are factual similarities between *Henke* and *Almeida*, and in the Eleventh Circuit, defendant Gupta (who pleaded guilty and testified against his co-defendants in *Henke*) may have waived any privilege by leaving the JDA and testifying. Here, however, there is no waiver because the Witness 1/Ledo JDA remains intact. Thus, under the circumstances present in this case where there is no waiver, *Henke* remains persuasive, requiring disqualification. Mr. Shohat, by suggesting use of outside counsel to cross-examine Mr. Ledo Nass, tacitly admits that he cannot represent Vuteff without relying on the confidential information provided by Mr. Ledo Nass; his ability to represent Vuteff thus is impaired, and he would breach the duty of confidentiality owed to Mr. Ledo Nass.

previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense.

*Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977)[5] (defendants moved to disqualify attorney who, in prior criminal case, met with them as then co-defendants *inter alia* "to develop a cooperative defense," during which time defendants contended the attorney "was privy to a substantial amount of confidential information" (which the attorney denied); "hold[ing] that when information is exchanged between various co-defendants and their attorneys [in a joint defense] that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause. In such a situation, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants").

A matter is substantially related where the prior representation is "akin to the present action in a way reasonable people would understand as important to the issues involved." *United States v. Delorme*, 2009 WL 33836, at *6 (S.D. Fla. Jan. 5, 2009) (citing *Est. of Jones v. Beverly Health and Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304, 1310 (M.D. Fla. 1999) (quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981)). In cases where an actual conflict would subject an attorney to disqualification, a client may waive this conflict, so long as the waiver is knowing, intelligent and voluntary. *Id.* at 1524.

"[J]oint defense agreements impose an ethical duty of confidentiality on participating attorneys, presenting the potential for conflicts of interest that might lead to the withdrawal or

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

disqualification of a defense attorney late in the proceedings or the reversal of conviction on appeal." *United States v. Stepney*, 246 F. Supp. 2d 1069, 1077 (N.D. Cal. 2003).

As one court noted in the District of Arizona, "[g]enerally, courts agree that a traditional attorney-client relationship is not established between an attorney and his client's former co-defendant via a joint defense agreement, but the attorney may nonetheless owe a duty of confidentiality to the former co-defendant. To determine whether such a duty exists, a court must consider whether there was an actual exchange of confidential information; courts do not presume that this exchange occurred." *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d 929, 962 (D. Ariz. 2011). In addition, "[f]iduciary obligations and professional responsibilities may warrant disqualification of counsel in appropriate cases even in the absence of a strict contractual attorney-client relationship. *Trone v. Smith*, 621 F.2d 994, 1002 (9th Cir. 1980) (citing *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1316-20 (7th Cir. 1978)).

Pursuant to Rule 11.1(c) of the Local Rules for the Southern District of Florida, "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar." S.D. Fla. R. 11.1(c). Florida Bar Rule of Professional Responsibility 4-1.6(a) provides that lawyers must not reveal confidential information without informed consent:

> (a) Consent Required to Reveal Information. A lawyer must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.

Fla. Bar R. of Prof'l Responsibility R. 4-1.6(a). Likewise, American Bar Association Model Rule of Professional Conduct 1.6(a) states similarly:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

7

Model Code of Prof'l Responsibility R. 1.6(a) (2023).

The American Bar Association's Standing Committee on Ethics and Professional Responsibility Formal Opinion 395 discussed a lawyer's obligations and ethical concerns when formerly part of a "joint defense consortium," which is almost identical to a JDA. ABA COMM. ON ETHICS AND PROF'L RESPONSIBILITY, Formal Op. 395 (1995) [hereinafter "ABA OP."]. Formal Opinion 395 recognized that attorneys within a joint defense agreement/consortium are obligated to maintain the confidences of other individuals within the group, even if the attorney does not directly represent those individuals:

> Information of both of the kinds likely to have been shared pursuant to the "joint defense consortium" [shared work product and shared attorney-client confidences] would be "information relating to representation of a client" under Rule 1.6(a) which Lawyer would have the obligation, owed to [Former Client], to maintain in confidence under Rule 1.6(a), even though the information came not from [Former Client] but from another member of the consortium that was not represented by Lawyer.

*Id.* The Formal Opinion went on to say that when the current representation is "related" to the prior JDA matters, that a "[l]awyer would, however, be prohibited by that provision [Rule 1.6] from disclosing the information in connection with the new representation, unless his former client consented, after consultation, to such disclosure." *Id.*

## ARGUMENT

All authority—caselaw, ethics rules, and the rules of professional conduct—necessitates disqualification of Mr. Shohat. In the pre-trial stage, a court should disqualify an attorney if it determines that either an actual or a potential conflict of interest exists. *See Ross*, 33 F.3d at 1523; *United States v. Culp*, 934 F. Supp. 394, 399 (M.D. Fla. 1996). Here, an actual conflict exists and

disqualification is appropriate based on confidential information Mr. Shohat received from Witness 1 and Mr. Ledo Nass.

First, Mr. Shohat should be disqualified from representing Vuteff in this criminal matter because he received confidential information from Mr. Ledo Nass during their participation in the Witness 1/Ledo JDA. Mr. Shohat was part of the Witness 1/Ledo JDA involving Mr. Ledo Nass in a matter substantially related to this criminal case, confidential information was shared by Mr. Ledo Nass with Mr. Shohat[6] within the Witness 1/Ledo JDA, and Vuteff now is materially adverse to Mr. Ledo Nass because Mr. Ledo Nass will be a witness against him at trial. Mr. Shohat should be disqualified from representing Vuteff.

Second, Mr. Shohat's representation of Vuteff in a substantially related matter to his representation of Witness 1 risks violations of Florida Rule of Professional Conduct 4-1.6(a) and Model Rule of Professional Conduct 1.6 because Witness 1 has not waived any conflict of interest to allow Mr. Shohat to represent Vuteff. Nor has Witness 1 consented to Mr. Shohat revealing or using Witness 1's confidential information. Mr. Ledo Nass has not waived any potential conflict of interest to allow Mr. Shohat to represent Vuteff, and Mr. Ledo Nass has not consented to the use of his confidential information by Mr. Shohat when representing Vuteff.

The Court has undertaken the proper inquiry in determining whether Mr. Shohat should be disqualified as counsel for Vuteff based on Mr. Shohat's participation in the Witness 1/Ledo JDA, which inquiry included a review of affidavits submitted by Witness 1 and Mr. Ledo Nass, documents that were part of the Witness 1/Ledo JDA, and the sealed testimony of Mr. Ledo Nass

---

[6] The Court previously acknowledged—prior to hearing directly from Mr. Ledo Nass—that "I think we were all in agreement the confidential information was disclosed [to Mr. Shohat]," and Mr. Shohat acknowledged, "[c]onfidential information was certainly disclosed, Judge. We don't dispute that." Evid. Hr'g at 112:16-25 (Jan. 10, 2023).

concerning oral communications that were part of the Witness 1/Ledo JDA.  As stated above, the facts relevant to the Motion to Disqualify are undisputed.  Based on those facts, and in order to preserve the integrity of the administration of justice, Mr. Shohat should be disqualified as counsel for Vuteff.

    A.  <u>Mr. Shohat Should Be Disqualified Based on His Participation in the Witness 1/Ledo JDA</u>

Mr. Shohat should be disqualified as counsel for Vuteff based on his representation of Witness 1 and their participation, with Mr. Ledo Nass, in the Witness 1/Ledo JDA.

Participation in a joint defense agreement can disqualify an attorney when confidential information passed as part of the joint defense agreement becomes an issue at the trial.  *All Am. Semiconductor*, 2008 WL 5484552, at *6.  As the Fifth Circuit stated: "[A]n attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense."  *Armco Steel Corp.*, 559 F.2d at 253.

This Court has already heard evidence and/or found that each condition articulated by the Fifth Circuit has been met here, requiring disqualification of Mr. Shohat.  First, the matters are substantially related.  Evid. Hr'g Tr. 10:17-22 (Jan. 10, 2023).  Second, confidential information was passed by Mr. Ledo Nass to Mr. Shohat as part of the Witness 1/Ledo JDA and that confidential information was material to the criminal case against Vuteff.  *See* Evid. Hr'g Tr. 14:18-53:18 (Jan. 10, 2023); Evid. Hr'g Tr. 4:2-6, 8:18-9:6 (May 2, 2023).

That is because confidential information was passed to Mr. Shohat and Witness 1 as part of the Witness 1/Ledo JDA from Mr. Ledo Nass.  That Mr. Ledo Nass passed substantially related, material information is apparent from the prior two hearings, during which the prosecution team

was not present, where the Court took evidence of what information Mr. Ledo Nass provided to

Mr. Shohat and Witness 1, both in written and oral form.  Evid. Hr'g Tr. 112:16-25 (Jan. 10, 2023);

Evid. Hr'g Tr. 4:2-6. 5:17-6:19 (May 2, 2023).  Without having been present at those hearings, the

government contends, based on their length and the Court's comments after the hearings (as well

as its general knowledge of Mr. Ledo Nass's information), that the information pertains to the

PDVSA bribery loan scheme and subsequent laundering of funds associated with that scheme,

which is the focus of the criminal charges in this criminal case, as well as in *United States v. Convit*

*Guruceaga, et al.*, 18-cr-20685-WILLIAMS and *United States v. Ledo Nass*, 23-cr-20089-

WILLIAMS.  Evid. Hr'g Tr. 10:17-24 (Jan. 10, 2023); Evid. Hr'g Tr. 6:2-18 (May 3, 2023).

In fact, prior to the filing of the Motion to Disqualify, Mr. Shohat acknowledged to the

government that the matters were substantially related.  Vuteff DE 37 at 2-3.  Mr. Shohat again

conceded the matters are substantially related during a hearing and the Court agreed:

> DEFENSE ATTORNEY SHOHAT: I represented Witness 1, Brother B, and I
> announced that this morning. What I represented him on was substantially related.
> It was the investigation of the Eaton-Rantor matter.
>
> THE COURT: And my review of the materials that I've reviewed in camera
> confirms that.

Evid Hr'g at 10:17-22 (Jan. 10, 2023).

Moreover, as alleged in this criminal case and related matters, the PDVSA bribery loan

scheme and associated money laundering was a complicated, multi-faceted conspiracy, involving

several individuals, including Venezuelan public officials.  *United States v. Convit Guruceaga, et*

*al.*, 18-cr-20685-WILLIAMS, Convit DE 3; *accord* Vuteff Complaint, Vuteff DE 3.  In addition,

the scheme involved multiple banks, financial services individuals, corporate entities, shell

companies, offshore bank accounts, and wire transfers.  *Id.*  If, through the Witness 1/Ledo JDA

or directly as a client, Witness 1 or Mr. Ledo Nass provided any information concerning the inner

workings of PDVSA's legal department, loan approval process, money received as a result, associated corporate entities, and bank accounts, that is Witness 1 and/or Mr. Ledo Nass's confidential information. *City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 235, 242 (W.D. Mich. 2000) ("confidential information may consist of thoughts, mental impressions and strategies regarding a claim against another party.") (citing *N., Inc. v. Apache Prod. Co.*, 914 F. Supp. 1575, 1581 (N.D. Ill. 1996)).  While Mr. Ledo Nass's information may overlap with other witnesses or his own statements made to the United States, his words or description of actions or inaction shared during the Witness 1/Ledo JDA are confidential. *Id.* This includes his description of co-defendants and co-conspirators and actions described in the complaint or left out of the complaint. *Id.*

Finally, Mr. Ledo Nass will be a witness against Vuteff, should Vuteff proceed to trial, making them materially adverse.  If the confidential information communicated to Mr. Shohat concerned the PDVSA bribery loan scheme and the subsequent laundering of funds associated with that scheme, which is the focus of the criminal charges in this criminal case and the others referenced above, that information will permeate Mr. Shohat's representation of Vuteff, from his opening statement, to trial strategy, to cross-examination of multiple witnesses—if not every witness called by the United States, and his closing argument. *Ross*, 33 F.3d at 1522-23.  All of that is information that no attorney—including Mr. Shohat—can be trusted to segregate out on their own. *Stepney*, 246 F. Supp. 2d at n.7 ("The court simply echoed the rule embraced by *Henke* and *Abraham Construction* that the law does not trust an attorney who actually possesses relevant confidences to proceed without using or disclosing them.").

    B.  <u>Mr. Shohat Should Be Disqualified Because Neither Witness 1 Nor Mr. Ledo Nass Has Waived Conflict</u>

Since Witness 1 has not consented to Mr. Shohat revealing or using his confidential information in Mr. Shohat's representation of Vuteff (and nor has Mr. Ledo Nass), the conflict of interest in Mr. Shohat's prior representation of Witness 1 and his current representation of Vuteff alone warrants disqualification. Fla. Bar R. of Prof'l Responsibility R. 4-1.6(a) ("A lawyer must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent."); Model Code of Prof'l Responsibility R. 1.6(a); ABA OP. 395; *Ross*, 33 F.3d at 1522-23; *Wheat*, 486 U.S. at 162. Mr. Ledo Nass shared information with Mr. Shohat and Witness 1 as part of the Witness 1/Ledo JDA, and as result, that information became confidential information relating to Mr. Shohat's representation of Witness 1. ABA OP. 395. The information passed by Mr. Ledo Nass was protected by an extension of the attorney-client privilege and Mr. Shohat owes Mr. Ledo Nass a fiduciary duty not to share that confidential information. *Trone*, 621 F.2d at 1002 ("Fiduciary obligations and professional responsibilities may warrant disqualification of counsel in appropriate cases even in the absence of a strict contractual attorney-client relationship."); *Henke*, 222 F.3d at 637; *Westinghouse Elec.*, 580 F.2d at 1319 ("When information is exchanged between co-defendants and their attorneys in a criminal case, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants, even though that co-defendant is not the one which he represented in the criminal case").

Absent waivers, Mr. Shohat risks running afoul the Rules of Professional Conduct if he continues to represent Vuteff, creating personal liability for Mr. Shohat (and thus a personal conflict under Florida Rule of Professional Conduct 4-1.7(a)(2)). For this reason, disqualification of Mr. Shohat from representing Vuteff is also appropriate. *See In re Gabapentin Patent Litig.*,

407 F. Supp. 2d 607, 616 (D. NJ. 2005) (disqualifying counsel after counsel failed to obtain a waiver from all parties to a joint defense agreement).[7]

    C.  <u>No Remedy Other Than Disqualification Is Adequate</u>

    The only appropriate remedy in this case is to disqualify Mr. Shohat from his representation of Vuteff in this criminal proceeding, because both Witness 1 and Mr. Ledo Nass refuse to waive the above-described conflicts.  As established, Mr. Shohat's former (or current) client, Witness 1 has a conflict of interest in Mr. Shohat's representation of Vuteff, which Witness 1 has not waived. In addition, the information passed from Mr. Ledo Nass to Mr. Shohat (and Witness 1) concerning the PDVSA bribery loan scheme and subsequent money laundering as part of the Witness 1/Ledo JDA will most almost certainly taint every aspect of Mr. Shohat's trial preparation in defense of Vuteff.  And to the extent the improper use of their confidential information becomes apparent to Witness 1, Mr. Ledo Nass or their new counsel during the trial, they may proceed against Mr. Shohat, a wrinkle which serves only adds to the conflict of interest concerns prevalent in this case.

    Because of the likely (and unavoidable) spillover of the confidential information passed to Mr. Shohat by Mr. Ledo Nass, there is no plausible belief that separate counsel can just parachute into the case to adequately cross examine Mr. Ledo Nass without speaking to Mr. Shohat (or any other tainted by imputation lawyer at Jones Walker who certainly already have spoken with Mr.

---

[7] It should be noted that Mr. Shohat has forced and continues to force additional disclosures of Witness 1 and Mr. Ledo Nass's privileged and confidential information by requiring Mr. Ledo Nass to testify in Court in front of filter counsel from both sides, and by seeking to have that same testimony disclosed to Vuteff's entire defense team, some of whom were not part of the Witness 1/Ledo JDA at the time when Mr. Shohat was a part of it (and who may, at a minimum, now be conflicted only by imputation), when neither Witness 1 nor Mr Ledo Nass have consented to such disclosures. [Vuteff DE 80.]  In addition, Mr. Shohat has failed to seek the position of Mr. Ledo Nass and Witness 1 as to his request for unsealing the transcript.  *Id.*  These ongoing efforts show the continuing nature of the conflict of interest in Mr. Shohat's representation of Vuteff, which requires disqualification.

Shohat about this case and may, even unknowingly, have received Mr. Ledo Nass's confidential information) about his theory of defense, Mr. Ledo Nass's role in the PDVSA bribery loan scheme, and other potential areas of cross-examination. *Stepney*, 246 F. Supp. 2d at n.7. Even then, would this separate counsel have to give a separate opening statement or closing argument addressing Mr. Ledo Nass's testimony? Putting aside Witness 1 and Mr. Ledo Nass, such a disjointed defense presentation would not be fair to Vuteff. The "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," and therefore disqualification is the only appropriate remedy in this matter. *Wheat*, 486 U.S. at 162; *see Ross*, 33 F.3d at 1522-23. And disqualification now, rather than later or at trial, is the more prudent course given Mr. Shohat's conflict. *E.g.*, *Stepney*, 246 F. Supp. 2d at 1084 ("Disqualification of attorneys late in the proceedings benefits no one—it deprives defendants of counsel whom they know and trust and perhaps even chose; it forces delays while new counsel become acquainted with the case, which harm defendants, the prosecution, and the court.").[8] As such, Mr. Shohat should be disquaalifed as counsel for Vuteff in this criminal matter.[9]

---

[8] *Accord United States v. Deverso*, 2005 WL 8167768, at *4 (M.D. Fla. Nov. 22, 2005) ("It is simply unknown what Lewis might say at trial that would hinder Atty. Ringsmuth from aggressive cross examination and thus, affect his vigorous representation of the Defendant. As the Supreme Court held in *Wheat*, '[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict.' 486 U.S. at 162. As such, the Supreme Court held that where a serious potential conflict of interest might arise, as in this case, the court has the discretion [to disqualify counsel]").

[9] At the January 10 hearing, the Court inquired about the remedy if Mr. Ledo Nass passed along only general denials to Mr. Shohat in the JDA. Evid. Hr'g Tr. 117:24-25; 118:1-24 (Jan. 10, 2023). At the May 2 hearing, Mr. Ledo Nass testified for approximately 3.5 hours under seal. From the length of the testimony alone, the government surmises that Mr. Ledo Nass communicated more than mere general denials within the JDA. But even if there were only general denials, that should not change the Court's analysis. To protect confidentiality and encourage defendants to disclose information fully and truthfully to their defense counsel, defendants should not have any fear

Mr. Shohat consistently cites to *United States v. Almeida*, 341 F.3d 1318, 1323-1324 (11th Cir. 2003), for the proposition that since Mr. Ledo Nass became a government witness, he has waived any attorney-client privilege associated with the Witness 1/Ledo JDA and that an independent attorney could be utilized to cross-examine Mr. Ledo Nass at trial.  DE 42; *see* Evid. Hr'g Tr. 36:11-18, 37:8-12, 37:24-51:7 (Dec. 20, 2023); Evid. Hr'g Tr. 75:5-76:14 (Jan. 10, 2023). Vuteff, however, was not a member of the Witness 1/Ledo JDA, which still is in place today.  Mr. Shohat is the one who left the Witness 1/Ledo JDA, not Mr. Ledo Nass.  In addition, the decision about inserting independent counsel to cross-examine the former member of the joint defense agreement in *Almeida* was never addressed by the Eleventh Circuit, nor were the implcations of the Florida Bar Rules of Professional Responsibility.  *Almeida*, 341 F.3d 1318.  It does not appear that the district court address the Florida Bar Rules of Professional Responsibility either.  *Id.* Further, this proposed solution by Mr. Shohat previously was rejected by a court in the Southern District of Florida due to the fact that in the "Court's view that such an approach would increase, rather than alleviate the concerns with the public's perception regarding the fairness of these proceedings and the integrity of the judicial process."  *United States v. Miranda*, 936 F. Supp. 945, 952 (S.D. Fla. 1996)*.*

---

concerning the nature of that the information being shared, that it is sufficiently specific or too generic.  If there is some point where the information is too generic to be protected, then there may be a chilling effect on disclosure.  This is especially true at the early point in an attorney-client relationship, where there may not yet be trust for the defendant to open up fully, and there is a progressive storytelling over time.  That lack of trust may be more acute in a case like here, where the communications are within the context of a JDA.  If generic information may be disclosed, then the attorneys and defendants may never reach the point of trust to allow the open and honest sharing of information.  Indeed, distinguishing between kinds of confidential information shared undermines the JDA.  JDAs, like the attorney-client privilege, are not designed solely to protect only the most specific information.  To retroactively amend JDAs to allow disclosure of more generic information would undermine its purpose and chill others from entering into JDAs.

D.  Mr. Ledo Nass Did Not Waive Attorney-Client Privilege By Testifying *Ex Parte* Under Seal Before the Court with Only His Counsel and Filter Counsel Present.

Ignoring all the thought and care the Court put into ensuring Mr. Ledo Nass's confidences were maintained—including multiple sealed hearings with filter counsel, Mr. Shohat argued in the closing moments of the May 3 hearing that Mr. Ledo Nass appearing at the Court's request somehow waived attorney-client privilege.

Mr. Ledo Nass did not waive attorney-client privilege, or the privileges associated with the Witness 1/Ledo JDA by testifying in an sealed hearing with filter counsel for each sideconcerning his oral communications as part of the Witness 1/Ledo JDA. [10]   Towards the end of the evidentiary

---

[10] This procedure was different than proposed and rejected in *In re Paradyne Corp.*, 803 F.2d 604, 605 (11th Cir. 1986), where "the district court judge's announced plans [was] to interview, in camera and *outside the presence of counsel*, individual defendants, witnesses, and attorneys in order to determine whether defense counsel received information protected by the attorney-client privilege of various individuals." (emphasis added).  *See also id.* at 607 ("the questioning would be much like a grand jury hearing, outside of the presence of counsel or witnesses. Those questioned would be permitted only to go outside chambers to confer with their counsel before answering specific questions. Although the court proposed to formulate its questions based on suggestions by the counsel for each side, counsel would not be permitted to cross-examine witnesses or to present their own witnesses or other evidence.").  Here, both sides had filter counsel present during Mr. Ledo Nass's testimony concerning privileged communications, and Vuteff's filter counsel had the opportunity to question Mr. Ledo Nass.

Further, while in *Paradyne* the court provided defendants with a transcript of an *ex parte* proceeding, that situation is far different than presented here.  There, defendants sought the transcript of "an *ex parte* presentation made to the district court by the government in support of its motion to disqualify." *Id.* at 612.  The court ordered the transcript of that hearing to be provided to defendants "to ameliorate any unfair advantage—or the appearance thereof—that might have resulted from the *ex parte* presentation at issue …." *Id.*  Here, Vuteff seeks that unfair advantage. Currently, both sides are in the same position—they were represented by filter counsel during Mr. Ledo Nass's testimony to avoid being exposed to Mr. Ledo Nass's privileged testimony.  Yet Vuteff now wants a copy of that transcript, something the Government does not want and cannot receive; the Government is not entitled to Mr. Ledo Nass's privileged communications.  Thus Vuteff seeks to create the problem that the court in *Paradyne* sought to remedy, notwithstanding that neither he nor his counsel are entitled to his privileged communications.

Finally, it is worth noting that Mr. Shohat did not object to the Court's procedure—questioning with filter counsel—until 11-days after the May 2 hearing.  Thus, Mr. Ledo Nass and his counsel

hearing held on May 3, 2023, Vuteff raised, for the first time, that by testifying as to the oral communications that were part of the Witness 1/Ledo JDA before only the Court and filter attorneys, Mr. Ledo Nass had waived any attorney-client privilege as to those communications pursuant to Federal Rule of Evidence 502(a).  Evid. Hr'g Tr. 4:6-15 (May 3, 2023).  This was testimony that Mr. Shohat demanded take place after asserting the affidavits were insufficient.  Evid. Hr'g at 4:6-15, 77:5-20 (Jan. 10, 2023); Evid. Hr'g Tr. 22:13-20 (Dec. 20, 2022). [11]

Vuteff's argument places an individual like Mr. Ledo Nass in an impossible position.  As is his right, Mr. Ledo Nass declined to consent to Mr. Shohat's representation of Vuteff based on a conflict of interest.  Because of the unique posture of the case—that Mr. Ledo Nass provided his confidential information to Mr. Shohat pursuant to a JDA, and not a direct attorney-client relationship—to substantiate the conflict the Court needed to hear directly from Mr. Ledo Nass.  Evid. Hr'g Tr. 140:17-25, 141:1  (Jan. 10, 2023).  If Mr. Shohat's argument were to be credited, Mr. Ledo Nass then would have no right to oppose Mr. Shohat's representation of Vuteff—he would have to effectively consent to the new representation or any privilege would be waived to substantiate the conflict.  That cannot be the right answer, especially where, as here, the Court and

---

were deprived of the opportunity to take other protective measure before Mr. Ledo Nass testified, which was under the understanding his testimony was protected.  Objecting almost two-weeks late (or really, five-months after the January 10 hearing when the procedure first was discussed), again serves only to punish Mr. Ledo Nass for exercising his rights.

[11] THE COURT: … Let me -- my last question was, procedurally, what more do we think we need to do today? And I remember asking you, Mr. Shohat, for you to review that, as well, which is not coming to my mind. So let me turn it to you.

DEFENSE ATTORNEY SHOHAT: I'll do the best I can, because it may not all come back to my mind. Judge, on the question of what we need further for this hearing, **at a minimum, we need you to inquire of Witness Number 2, who's here.** If you aren't willing to inquire of Witness Number 2 -- and I'll explain on what areas – if you're not willing to inquire of Witness Number 2, **we would ask that a further hearing be set where a filter lawyer -- Mr. Wallace -- can be brought in to question Witness Number 2** in the area that I'm going to raise.") (emphasis added)

parties took great procedural efforts to ensure that Mr. Ledo Nass's information remained confidential.

But even if Mr. Ledo Nass did somehow waive privilege (he did not), that would not mean he also waived the conflict. "Because the doctrines of 'attorney-client privilege' and 'conflict of interests' 'serve different purposes and are not coextant, it cannot be inferred that a client waives his attorney's conflict of interest solely because he had waived his attorney-client privilege.'" *U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 101 F. Supp. 3d 1268, 1278 (S.D. Fla. 2015), *aff'd*, 101 F. Supp. 3d 1280 (S.D. Fla. 2015); *see also Ragasa v. Cnty. of Kauai*, 2016 WL 11597768, at *8 (D. Haw. July 6, 2016) ("Although voluntary disclosure of confidential communications may result in a waiver of the attorney-client privilege as to the communication, such disclosure does not permit an otherwise impermissible conflict of interest. The two rules are distinct and regulate different ethical principles."). Further, Witness 1 has not waived.

Mr. Ledo Nass presented written communications that were part of the Witness 1/Ledo JDA and testified as to the oral communications that were part of the Witness 1/Ledo JDA because the Court determined that it needed to make a finding of fact as to whether confidential information was passed to Mr. Shohat as part of the Witness 1/Ledo JDA. Evid. Hr'g Tr. 75:13-21, 79:3-16 (December 20, 2022). Evid. Hr'g Tr. 125:10-20, 137:24-138:1-19 (Jan. 10, 2023). As such, to remove any doubt, the Court should find and order that the disclosures by Mr. Ledo Nass concerning his communications during the Witness 1/Ledo JDA to the Court and others present did not waive his attorney-client privilege as to those communications. Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding.").

## CONCLUSION

For the foregoing reasons, and in order to ensure that the "ethical standards of the profession and that legal proceedings appear fair to all who observe them" and to ensure "a fair, efficient, and orderly administration of justice," the United States respectfully requests the Court grant the Motion to Disqualify. *Wheat*, 486 U.S. at 162; *see Ross*, 33 F.3d at 1522-23.

Respectfully Submitted,

GLENN S. LEON                     MARKENZY LAPOINTE
CHIEF, FRAUD SECTION              UNITED STATES ATTORNEY

By:   */s/ Paul A. Hayden*             By:   */s/ Kurt K. Lunkenheimer*
      PAUL A. HAYDEN                          KURT K. LUNKENHEIMER
      Trial Attorney                          Assistant United States Attorney
      Fraud Section, Criminal Division        Court ID No. A5501535
      U.S. Department of Justice              U.S. Attorney's Office - SDFL
      1400 New York Avenue, N.W.              99 N.E. 4th Street, Suite 600
      Washington, D.C. 20005                  Miami, FL 33132-2111
      Telephone: 202-353-9370                 Telephone: (305) 961-9008
      Email: paul.hayden2@usdoj.gov           Email: Kurt.Lunkenheimer@usdoj.gov