UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cr-20306-DPG/EGT

UNITED STATES OF AMERICA

v.

LUIS FERNANDO VUTEFF,

    Defendant.
_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT FERNANDO VUTEFF'S OBJECTIONS TO CHIEF MAGISTRATE JUDGE TORRES' ORDER GRANTING DISQUALIFICATION [D.E. 86]

The United States, by and through its undersigned attorneys, responds to *Defendant Fernando Vuteff's Objections to Magistrate Judge Torres' Order Granting Disqualification* (DE 86) (hereinafter "the Objections") [DE 90]. Chief Magistrate Edwin G. Judge Torres's *Order on Motion to Disqualify Counsel Edward Shohat and Jones Walker* (the "Disqualification Order") [DE 86], was well-reasoned and properly applied the facts to the applicable law. As a result, it was not "clearly erroneous or contrary to law" L. Mag. R. 4(a)(1), and this Court should overrule the Objections and adopt the Disqualification Order in full.

### LEGAL STANDARD

As acknowledged by Defendant Luis Fernando Vuteff (hereinafter the "Defendant") in the Objections, the Distict Court's review is governed by Federal Rule of Criminal Procedure 59(a) and 28 U.S.C. § 636(b)(1)(A). Federal Rule of Criminal Procedure 59(a) provides that the district court can "modify or set aside any part of the order that is contrary to law or clearly erroneous. " Fed. R. Crim. P 59(a). Section 636(b)(1)(A) likewise provides that a disctrict court may "reconsider any pretrial matter....where it has been shown that a magistrate judge's order is clearly

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); L. Mag. R. 4(a)(1).

## ARGUMENT

Defendant's Objections should be overruled. The Disqualification Order applied the correct legal standard to the facts established over the course of four hearings, including evidentiary hearings, and through legal filings that Chief Magistrate Judge Torres considered from both Defendant and the Government. Following those hearings and after reviewing those materials, Chief Magistrate Judge Torres properly found that disqualifying Mr. Shohat and the Jones Walker law firm was the "most responsible and appropriate remedy." [DE 86.]

The Disqualification Order properly held:[1]

> In a situation involving a joint defense agreement, a former co-defendant of an attorney's client may seek disqualification of that attorney in a subsequent suit if (1) the attorney is now representing an adversary of the former co-defendant, (2) if the matters are substantially related and (3) if confidential information was exchanged during the prior action.

[DE 86 at 9 (citing *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977), cited in *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000); *see, e.g.*, *All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552, at *4-5 (N.D. Cal. Dec. 18, 2008); *Cochran v. Five Points Temporaries, LLC*, 2012 WL 4726285, at *8 (N.D. Ala. Sept. 27, 2012).] As the extensive record considered by Chief Magistrate Judge Torres reflects, Mr. Shohat

---

[1] In his objections, Defendant incorporated his prior briefing. Objections p.1 ¶ 2. If incorporation is proper under the relevant rules (which seems improper since objections must "specifically set forth" the alleged error), the United States incorporates the sound reasoning of the Disqualification Order, [DE 86], the United States' Motion to Disqualify, [DE 37], the United States' Supplemental Briefing in of the Motion to Disqualify, [DE 83]), as well as all arguments made at the four hearings held on the Motion to Disqualify on these dates: December 20, 2022, January 10, 2023, May 2, 2023, and May 19, 2023, [DE 63, 67, 79 and 85.]

and Jones Walker learned of confidential information from "Brother 2,"[2] and as such, they owe a fiduciary duty to him to keep that information confidential. [DE 86 at 13 ("[I]t is undisputed that Mr. Shohat learned confidential information from brother 2.")] Because of that fiduciary duty and the confidential information passed from Brother 2 to Mr. Shohat, Mr. Shohat cannot continue to represent the Defendant because:

> It is hard to see how from the inception of his representation for this new client Mr. Shohat has been able to completely isolate in his mind facts or strategies that were discussed in those early meetings in Panama. Wittingly or unwittingly, there is a present risk that those confidences have infected the strategies and theories that Mr. Shohat has already formulated for Defendant, even if he consciously believes he did not convey any "confidential information" in the process. It is naïve to conclude that Mr. Shohat's representation of this Defendant has been entirely divorced from what Mr. Shohat learned from brother 1 and brother 2 during those privileged discussions. That alone is material prejudice that warrants disqualification at this stage because damage may have already taken place from the former clients' perspective.

[DE 86 at 14.]

A. Defendant's Objections to the Disqualification Order

Defendant objects to the Disqualification Order on six grounds: (1) that Chief Magistrate Judge Torres improperly relied on *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977), over *United States v. Almeida*, 341 F.3d 1318 (11th Cir. 2003); (2) that Chief Magistrate Judge Torres erroneously relied in Florida Bar Rule 4-1.6 when

---

[2] As the Disqualification Order explained, Mr. Shohat and his firm represented Brother 1, an unindicted co-conspirator. Brother 1 and his brother, Brother 2 (Alvaro Ledo Nass), were in a joint defense agreement, in which Mr. Ledo Nass provided directly to Mr. Shohat information concerning the charged conspiracy (what information, the Government trial team is specifically unaware but understands generally was significant and substantially related to Mr. Shohat and his firm's representation of the Defendant). Mr. Ledo Nass provided that information directly to Chief Magistrate Judge Torres outside the Government trial team's and Defendant's trial team's presence. That testimony, in part, led to the Disqualification Order. Mr. Ledo Nass has pleaded guilty for his role in the same conspiracy Mr. Vuteff is charged with participating in and has agreed to cooperate with the Government, including testifying at trial. *See United States v. Ledo Nass*, 23-CR-20089-KMW (S.D. Fla).

3

evaluating the use of confidential information of Brother 2 held by Mr. Shohat and Jones Walker; (3) that Chief Magistrate Judge Torres erred by failing to understand a hypothetical discussed during oral arguments on the Motion to Disqualify and is referenced in a footnote in the Disqualification Order; (4) that Chief Magistrate Judge Torres erred by declining to accept a proposed solution to any conflict of interest by appointing independent counsel to cross-examine Brother 2 at trial; (5) that Chief Magistrate Judge Torres erred in evaluating and understanding the joint defense material (both written and oral) presented to the Court *ex parte* of the Defendant's prosecution team; and (6) that Chief Magistrate Judge Torres made findings contrary to law when he held that Brother 2 had not voluntarily waived the confidential information provided by him to Mr. Shohat and Jones Walker by participating in the hearings on the Motion to Disqualify.

Although presented as six objections, they can combined into four general categories: (I) an objection based on Chief Magistrate Judge Torres purportedly failing to understand and apply *Almeida*; (II) an objection based on Chief Magistrate Judge Torres purportedly failing to find that the independent counsel solution proposed by the Defendant was a sufficient remedy; (III) that Chief Magistrate Judge Torres purportedly erred in evaluating and understanding the joint defense material (both written and oral) presented to the Court *ex parte* of the prosecution team; and (IV) that Chief Magistrate Judge Torres purportedly made findings contrary to law when he held that Brother 2 had not voluntarily waived the confidential information provided by him to Mr. Shohat and Jones Walker by participating in the hearings on the Motion to Disqualify.

Addressing first category III.  For a large part of the proceedings, the United States' prosecution team was absent from the courtroom and proceedings, while joint-defense materials involving Brother 2 and Brother 1 were being presented to Chief Magistrate Judge Torres.  The United States' prosecution team is not entitled to those materials and does not want to be exposed

4

to them. As a result, the United States' attorneys (AUSAs and Trial Attorney) prosecuting the Defendant left the courtroom and were not a party to the joint-defense materials shared with Chief Magistrate Judge Torres, nor have they seen the Defendant's specific objections to Chief Magistrate Judge Torres's reasoning as to these materials (having appropriately been redacted from the Defendant's filing). As a corollary, that category will not be addressed in this response. If filter counsel for the United States determines that a specific response is needed based on these objections, he will file a response *ex parte* of the prosecution team. Either way, the United States believes that Chief Magistrate Judge Torres is more than qualified and capable in evaluating the joint defense materials presented to him throughout two hearings and applying those facts to the applicable law. And as a result, the United States is confident Chief Magistrate Judge Torres did so properly when finding that Mr. Shohat and Jones Walker should be disqualified from representing the Defendant, in part, based on this information. As to the other categories of objections, the United States will address them below.

1. <u>Neither Brother 1 nor Brother 2 Waived The Privilege Associated With the Confidential Information</u>

Defendant, both before Chief Magistrate Judge Torres and in his Objections, argues that Brother 2's participation in these proceedings somehow caused the wholesale waiver of any privilege over the information provided *ex parte* to Chief Magistrate Judge Torres. The Government submits, however, that the entire proceedings, as designed by Chief Magistrate Judge Torres, were designed to protect the Brothers' privileged materials, and complying with court orders under the circumstances cannot amount to waiver. But fundamentally, Defendant's focus on purported waiver appears to be a concession that the information passed to Mr. Shohat and Jones Walker by the Brothers, absent waiver, is so significant and substantially related that Chief

5

Magistrate Judge Torres was correct to disqualify them.

Neither Brother 1 (Mr. Shohat's client) nor Brother 2 have waived the privilege associated with the confidential and privileged information that they (either through Brother 1 or Brother 2) shared with Mr. Shohat and Jones Walker.[3] That information was shared directly with Mr. Shohat and Jones Walker when Mr. Shohat represented Brother 1, and through that representation participated in a joint defense agreement ("JDA") between Brothers 1 and 2. Brother 2 testified before Chief Magistrate Judge Torres for a long time *ex parte* of the United States prosecution team and the Defendant's counsel. Chief Magistrate Judge Torres properly relied on that testimony to find privileged information was passed to Mr. Shohat.

In evaluating that privileged information in the context of Mr. Vuteff's desire also to hire Jones Walker and Mr. Shohat as his counsel, the Disqualification Order properly found the cases that the Defendant relies on (*QBE Ins. Corp. v. Jorda Enters., Inc.*, 286 F.R.D. 661, 665 (S.D. Fla. 2012) and *United States v. Almeida*, 341 F.3d 1318 (11th Cir. 2003)) are not on point. [DE 86 at 15-27.]

In *QBE Insurance*, Magistrate Judge Goodman determined that a party to Civil Rule 11 sanctions proceedings, if it introduced documents/testimony on attorney-client privileged materials, may as a result waive any privilege. *QBE Ins.*, 286 F.R.D. at 667. As Chief Magistrate Judge Torres recognized correctly, *QBE Insurance* presents very difference circumstances from this case. Unlike in *QBE Insurance*, the Motion to Disqualify, the hearings, and the resulting Disqualification Order were proceedings to "uphold mandatory ethical standards—as opposed to pursuing affirmative relief." [DE 86 at 27.] Moreover, while Mr. Shohat and Jones Walker rely

---

[3] As noted, while Chief Magistrate Judge Torres was privy to this information in his role as the deciding judge, it was presented *ex parte* of the United States prosecution team, and, at times, *ex parte* to Mr. Shohat and Jones Walker.

on *QBE Insurance* to argue that Brother 2 waived any privilege as to the material he testified to before Chief Magistrate Judge Torres, Chief Magistrate Judge Torres properly found no waiver. That testimony was under Chief Magistrate Judge Torres's order, which proceedings and order he designed to protect Brother 2's privilege, and thus was *ex parte* of the United States' and Defendant's trial teams. Thus, the proceedings were a far cry from those presented in *QBE Insurance* (open court pursuing affirmative relief). And as Chief Magistrate Judge Torres properly noted, Mr. Shohat and Jones Walker, in their effort to fight disqualification, requested an evidentiary hearing on the Motion to Disqualify, argued that the more generalized affidavits provided to the Court by the United States were inadequate, the confidential information shared by Brother 2 with Mr. Shohat did not amount to material adversity, and that the Court needed to make specific findings of fact to disqualify him and his firm.[4] [*Id.* at 27-28.]

Therefore, Brother 2 did not testify or provide information to affirmatively assert any right (as in *QBE Insurance*) and he testified only on the demand of Defendant's counsel, and then, only under order of Chief Magistrate Judge Torres with multiple safeguards to protect his privilege (*ex parte*, filter counsel, sealed proceedings). Thus, Brother 2's testimony cannot be considered a waiver of his confidential information, and nor can his generalized affidavit waive privilege.[5]

2. *Almeida* is Not Controlling Here, Where JDA Members Are Not Testifying Against Other

---

[4] THE COURT: … Let me -- my last question was, procedurally, what more do we think we need to do today? And I remember asking you, Mr. Shohat, for you to review that, as well, which is not coming to my mind. So let me turn it to you.

DEFENSE ATTORNEY SHOHAT: I'll do the best I can, because it may not all come back to my mind. Judge, on the question of what we need further for this hearing, **at a minimum, we need you to inquire of Witness Number 2, who's here.** If you aren't willing to inquire of Witness Number 2 -- and I'll explain on what areas – if you're not willing to inquire of Witness Number 2, **we would ask that a further hearing be set where a filter lawyer -- Mr. Wallace -- can be brought in to question Witness Number 2** in the area that I'm going to raise.") Evid. Hr'g at 4:6-15, 77:5-20 (Jan. 10, 2023) (emphasis added); *see also* Evid. Hr'g Tr. 22:13-20 (Dec. 20, 2022).

[5] As recognized by Chief Magistrate Judge Torres, the proceedings he ordered were designed not

7

JDA Members.

Likewise, Chief Magistrate Judge Torres correctly analyzed and applied the applicable caselaw to this unique circumstance, which resulted in the disqualification of Mr. Shohat and the Jones Walker law firm. In the Disqualification Order, Chief Magistrate Judge Torres properly found that *Almeida* did not control this case because the determinative facts in *Almeida* do not align with those of this case, and *Almeida* was a narrowly tailored ruling to the specific facts there. [DE 86 at 15-26.]

In *Almeida*, a month before trial, one member to a JDA left the JDA to cooperate with the government and testify against the other JDA member. *Almeida*, 341 F.3d at 1320. The Eleventh Circuit held that under those circumstances, when parties are in a JDA together and one turns government witness against the other party (or parties) to the JDA, then the witness waives any privilege against the other JDA members. *Almeida*, 341 F.3d at 1325-26. The key fact here is Defendant Vuteff never was in a JDA with Brothers 1 and 2.

First, as Chief Magistrate Judge Torres rightly pointed out, *Almeida* is not factually on point with the circumstances presented here, and is a limited ruling purely involving members (and former members) of a JDA. [*Id.* at 15-20.] Defendant Vuteff was not a member of the JDA between Brothers 1 and 2 and their counsel, which included Mr. Shohat. [*Id.*] Here, it is only Mr. Shohat and other counsel who were booted from the JDA. Of course, attorneys are not *parties* to JDAs; they are *reprentatives* for parties. According to the Brothers, Brothers 1 and 2 remain in

---

to waive privilege, and described above, as a result, there could be no waiver by acceding to Court orders. Therefore, Chief Magistrate Judge Torres did not reach the Government's alternative request for a Fed. R. Evid. 502(d) order, providing that any testimony would not amount to a waiver because it was provided under court order. To the extent the Court somehow disagrees with Chief Magistrate Judge Torres's regarding waiver, it should order that under Fed. R. Evid. 502(d) any testimony under Chief Magistrate Judge Torres's order did not waive privilege.

the JDA and (unlike in *Almeida*), Brother 2 is not testifying against Brother 1 (or any other JDA party, or vice versa). Therefore, because JDA participants are not tesifying against each other, as Chief Magistrate Judge Torres highlighted, *Almeida* is inapplicable.[6] [*Id.*]

The appropriate analysis, as outlined in the Disqualification Order, focuses on the binding case of *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir.1977). *Armco Steel* held that in situations involving a former co-defendant member of a JDA testifying against a client can result in disqualification "if (1) the attorney is now representing an adversary of the former co-defendant, (2) if the matters are substantially related and (3) if confidential information was exchanged during the prior action." *See* 559 F.2d at 253; [DE 86 at 9-10.] And as Chief Magistrate Judge Torres noted after four hearings and multiple rounds of briefing:

> [T]he available record reflects that Mr. Shohat was privy to confidences in the course of the JDA between his former client and brother 2; that the information that brother 2 relayed to Mr. Shohat during these joint defense meetings relates to and is materially adverse to Mr. Shohat's current client; that Mr. Shohat's client was never a party to the JDA; that the JDA between brother 1 and brother 2 remains in effect; that the only relevant party who has departed the brothers' unified front is Mr. Shohat; that brother 2, and potentially brother 1, will testify against Mr. Shohat's client in this case; and that neither brother has waived any conflict of interest arising from Mr. Shohat's representation of brother 1 or his corollary participation in the brothers' JDA. In view of these facts, we find it appropriate to disqualify counsel.

[DE 86 at 22.]

Thus, based on the record and the application of precedential caselaw to the facts here, the objection to the Disqualification Order on the Court's failure to apply *Almeida* to this case should

---

[6] In the hypothetical discussed in footnote 3 to the Disqualification Order, the Court prudently observed that the reason that the hypothetical did not apply here is because in the hypothetical Brother 2, in addition to testifying against the Defendant, he would be testifying against a former member of his JDA – Brother 1, thus, implicating *Almeida*. It also fails because Mr. Shohat is attempting to provide himself party status. He is not a party. If (here) information remains privileged between JDA members, he as a fired attorney cannot use that information to the JDA members' detriment.

be overruled and Mr. Shohat and Jones Walker should be disqualified from representing the Defendant.[7]

3. Disqualification Is the Proper Remedy

There is no real dispute that there is a conflict. What Mr. Shohat and Jones Walker really dispute is the remedy. But in this case, under the circumstances and facts presented, disqualification of Mr. Shohat and the Jones Walker law firm is the appropriate remedy. The appointment of independent counsel to cross-examine Brother 2 when he testifies against the Defendant at trial is an unworkable "solution."

As Chief Magistrate Judge Torres properly recognized, it is impossible to isolate in one's mind where one learned of information. [*See* DE 86 at 14.] In the Defendant's objections to the Disqualification Order, the Defendant fails to understand how the confidential information obtained from both Brothers 1 and 2 will not seep into and permeate Mr. Shohat and Jones Walker's entire representation of the Defendant. The issue is not just about the cross-examination

---

[7] The Defendant disputes the timing of the Court's Disqualification Order, implying that the notion that the representation is in its "infancy" is wrong. That said, the Defendant fails to note that Defendant has not yet been arraigned, discovery has not yet been produced by the United States, which is voluminous and includes financial records, no trial date has been set, and the United States has not presented the Defendant with a witness list of those that will testify against him. Thus, while temporally, time has passed since the Defendant made his initial appearance here while this litigation has been ongoing, Chief Magistrate Judge Torres was correct in stating that procedurally, the litigation was at its "infancy" and at an early stage which also weighed in favor of disqualification. [DE 86 at 14, 24 and 31.] Indeed, the problems of waiting for a conflict to arise mid-trial are highlighted in *United States v. Executive Recycling*, 908 F. Supp. 2d 1156, 1163-64 (D. Colo. 2012). There, the conflict arose mid-trial and caused significant issues in that case, that the United States and Chief Magistrate Judge Torres recognized could be avoided by dealing with the conflict at the start of the case, rather than waiting. In addition, in *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000), a conflict arose mid-trial that led to a mistrial.

of Brother 2 at trial – a point Defendant repeatedly fails to comprehend.  As Chief Magistrate Judge Torres aptly noted:

> It is hard to see how from the inception of his representation for this new client Mr. Shohat has been able to completely isolate in his mind facts or strategies that were discussed in those early meetings in Panama. Wittingly or unwittingly, there is a present risk that those confidences have infected the strategies and theories that Mr. Shohat has already formulated for Defendant, even if he consciously believes he did not convey any "confidential information" in the process. It is naïve to conclude that Mr. Shohat's representation of this Defendant has been entirely divorced from what Mr. Shohat learned from brother 1 and brother 2 during those privileged discussions. That alone is material prejudice that warrants disqualification at this stage because damage may have already taken place from the former clients' perspective.

[DE 86 at 14.]  Given this, the Government is at a loss for how "independent counsel" would work in the context of an actual trial.  If Mr. Shohat and Jones Walker cannot address Brothers 1 or 2, how can they inform independent counsel of their theory of the case while preparing for trial (or does that implicate information learned from Brothers 1 or 2)? Can Mr. Shohat and Jones Walker prepare independent counsel to cross examine Brothers 1 or 2 based on their theory of the case (or does that too implicate information learned from Brothers 1 or 2)? Can Mr. Shohat and Jones Walker present an opening statement addressing Brothers 1 or 2, or do they require independent counsel to stand up and, in the middle, crowbar in his portion of the opening?  And, can Mr. Shohat and Jones Walker present a closing addressing Brothers 1 or 2, or again does independent counsel have to stand up and crowbar in his portion of the closing?  Defendant addresses none of that, or how this would work in practice, from trial prep, through opening, through testimony, through closing.  So not only is there a risk that information learned from Brothers 1 and 2 will be used

improperly, there is a real risk that this type of disjointed defense will harm Defendant Vuteff's case at any trial.

Finally, the Court correctly recognized that "Florida courts have not embraced the use of such 'ethical wall' measures as an adequate remedy for curing conflicts of interest. Instead, the law in our district is that 'if one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification.'" [DE 86 at 25 (*citing United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994).] This includes a criminal case involving Mr. Shohat himself, *United States v. Miranda*, 936 F. Supp. 945, 952 (S.D. Fla. 1996), in which that court stated: "Given Lopez's non-consent to Shohat's representation of Miranda, and the Court's determination of the existence of an actual conflict of interest, permitting the use of back-up counsel" as an "alternative to disqualification [is] inappropriate for this case." That court in *Miranda* also noted that the use of independent counsel alternative "would increase, rather than alleviate the concerns with the public's perception regarding the fairness of these proceedings and the integrity of the judicial process." *Miranda*, 936 F. Supp. at 952. The Government agrees, and the Defendant's objection to Chief Magistrate Judge Torres's finding that the independent counsel appointment alternative is insufficient, should be overruled.

[THIS PORTION OF THE PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For these reasons, to ensure that the "ethical standards of the profession and that legal proceedings appear fair to all who observe them" and to ensure "a fair, efficient, and orderly administration of justice," the United States asks the Court to overrule the Defendant's objections to the Disqualification Order, disqualify Mr. Shohat and the Jones Walker law firm and set the Defendant for arraignment. *Accord Wheat v. United States*, 486 U.S. 153, 162 (1988); *see Ross*, 33 F.3d at 1522-23.

Respectfully Submitted,

| | |
|---|---|
| GLENN S. LEON | MARKENZY LAPOINTE |
| CHIEF, FRAUD SECTION | UNITED STATES ATTORNEY |

By: */s/ Paul A. Hayden*
PAUL A. HAYDEN
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-353-9370
Email: paul.hayden2@usdoj.gov

By: */s/ Kurt K. Lunkenheimer*
KURT K. LUNKENHEIMER
Assistant United States Attorney
Court ID No. A5501535
U.S. Attorney's Office - SDFL
99 N.E. 4th Street, Suite 600
Miami, FL 33132-2111
Telephone: (305) 961-9008
Email: Kurt.Lunkenheimer@usdoj.gov