UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20306-GAYLES/TORRES(s)

UNITED STATES OF AMERICA

vs.

LUIS FERNANDO VUTEFF,

    Defendant.
_____/

## FACTUAL PROFFER

    The United States of America and LUIS FERNANDO VUTEFF (the "defendant") stipulate and agree that the information stated herein is true and accurate and sufficient basis for the defendant's plea of guilty to the money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h) charged in the Superseding Information and the forfeiture of the assets identified in the Plea Agreement. Had this matter proceeded to trial, the defendant stipulates and agrees that the Government would have proven the facts alleged below beyond a reasonable doubt.

    1.    From in or around 2006 to in or around 2018, the defendant, an Argentinian national, contracted with Ralph Steinmann ("Steinmann"), who along with Steinmann's close relative, owned and operated a European financial institution and related entities (collectively, "European Financial Institution 1") with offices located in South America. The defendant, along with Steinmann, recruited South American clients to invest the clients' funds offshore in European

1

Financial Institution 1 and in associated financial institutions, including another European financial institution in Malta ("European Financial Institution 2"[1]).

2. Starting in or around 2012 and continuing until in or around 2018, there were various foreign currency exchange schemes using loan contracts with Venezuela's state-owned and state-controlled oil company, Petróleos de Venezuela, S.A. ("PDVSA"), that were unlawfully obtained via bribes and kickbacks. These schemes exploited Venezuela's fixed foreign currency exchange rate, which accorded Venezuelan bolivars an artificially high value compared to the open foreign currency exchange market.

3. The defendant was retained to launder the proceeds of one such scheme, including by coordinating the transfer of funds for the benefit of former Venezuelan government officials with an individual who worked as a confidential source ("CS"). The defendant knowingly and voluntarily conspired with others to engage in monetary transactions involving criminally derived property of a value greater than $10,000 in the Southern District of Florida and elsewhere.

## EATON-RANTOR LOAN SCHEME

4. In or around 2013, Jose Vincente Amparan Croquer ("Amparan"), a Venezuelan national, introduced a co-conspirator ("Conspirator 7") to Steinmann. Steinmann subsequently onboarded Conspirator 7, a Venezuelan national and billionaire businessman who was the owner of a Venezuelan television network, as a client of European Financial Institution 1.

5. In or around June 2013, the defendant and Steinmann, both acting on behalf of Amparan and Conspirator 7, facilitated the incorporation of Eaton Global Services Limited ("Eaton"), a Hong Kong shell company with a nominee director. The defendant and Steinmann

---

[1] European Financial Institution 2 is referred to as European Financial Institution 1 in the Complaint [ECF No. 3].

2

also facilitated the opening of bank accounts in Europe for Eaton, including at European Financial Institution 2.

6. The defendant and Steinmann served as intermediaries between (i) European Financial Institution 2 and (ii) Amparan and Conspirator 7. For the defendant and Steinmann's efforts, European Financial Institution 2 paid European Financial Institution 1 certain fees for the benefit of the defendant and Steinmann.

7. Conspirator 7 and others subsequently used Eaton to launder hundreds of millions of Euros and U.S. dollars obtained through bribery and corruption from Venezuelan currency exchange loan schemes. For example, Conspirator 7, Conspirator 2, and Francisco Convit Guruceaga ("Convit") conspired with each other and others to obtain a loan contract with PDVSA that was assigned to Eaton. On or about December 17, 2014, Rantor Capital C.A. ("Rantor"), a Venezuelan shell company, executed a contract with PDVSA in which Rantor agreed to loan 7.2 billion Venezuelan bolivars to PDVSA. On or about December 23, 2014, Rantor executed an assignment contract with Eaton, in which Rantor assigned to Eaton its rights as PDVSA's creditor under the loan contract and in which PDVSA was given the right to cancel the debt within 180 days by paying the Euro equivalent of $600 million (the "Eaton-Rantor Loan Scheme").

8. The Eaton-Rantor Loan Scheme enabled Conspirator 7 and his co-conspirators to obtain access to the Venezuelan government's fixed foreign currency exchange rate, which valued the Venezuelan bolivar artificially highly compared to the rate available on the open market. Conspirator 7 and his co-conspirators exploited the difference between the two foreign currency exchange rates, resulting in a staggering profit. In short, Eaton ended up with the right to be repaid the Euro equivalent of $600 million for a loan to PDVSA worth around $50 million (the

approximate value of 7.2 billion Venezuelan bolivars based on the open market exchange rate), resulting in profits of the Euro equivalent of approximately $550 million.

9. Conspirator 7 and his co-conspirators split these illicit profits. A significant portion of the illicit profits was paid as bribes to Venezuelan officials involved in obtaining the loan contract, including to Carmelo Antonio Urdaneta Aqui ("Urdaneta"), a Venezuelan national and former Legal Counsel the Venezuelan Ministry of Oil and Mines, and Alvaro Ledo Nass ("Ledo"), a Venezuelan national and former PDVSA General Counsel.

10. As part of the Eaton-Rantor Loan Scheme, between on or about December 29, 2014, and on or about February 2, 2015, PDVSA transferred the Euro equivalent of $600 million to European Financial Institution 2, a portion of which was transferred through a bank account in the United States. By early 2015, the other corrupt proceeds from the scheme were distributed to Convit and other co-conspirators, including the CS. Conspirator 7 personally profited over €65 million, which he distributed in a series of transactions from Eaton's account at European Financial Institution 2 as discussed further below.

11. In and around January 2015, in recorded conversations and BlackBerry Messenger chats, Convit and Urdaneta each discussed separately with the CS the CS's receipt of proceeds from the Eaton-Rantor Loan Scheme, and instructed the CS on how to distribute the funds. Some of those chats occurred while the CS was in the United States, including in the Southern District of Florida.

12. On or about January 15, 2015, the defendant and Steinmann, acting on behalf of European Financial Institution 1, sent an invoice ("Invoice 1") to another shell company associated with Conspirator 7 requesting payment of nearly €2.2 million for Rantor's assignment of PDVSA's loan repayment to Eaton.

13. In or around February 2015, after Eaton received its final transfer of the Eaton-Rantor Loan Scheme proceeds from PDVSA, Eaton then transferred nearly €2.2 million from European Financial Institution 2 to European Financial Institution 1. The transfer relied on Invoice 1 as justification.

14. Between in or around January 2015 and in or around January 2016, at the direction of Conspirator 7 and Amparan, the defendant and Steinmann, acting on behalf of European Financial Institution 1, caused European Financial Institution 2 to conduct numerous financial transactions on behalf of Eaton that were greater than $10,000 and that involved proceeds of the Eaton-Rantor Loan Scheme. In total, more than $9.5 million was transferred to bank accounts in the United States, including bank accounts located in the Southern District of Florida. These transactions included, but were not limited to:

(a) on or about January 13, 2015, the defendant and Steinmann, acting on behalf of European Financial Institution 1, caused European Financial Institution 2 to transfer approximately $4,050,000 from Eaton to the bank account of an aircraft title services company in Oklahoma City, Oklahoma;

(b) on or about June 5, 2015, the defendant and Steinmann, acting on behalf of European Financial Institution 1, caused European Financial Institution 2 to transfer approximately $649,000 from Eaton to the bank account of a yacht company in Miami, Florida; and

(c) on or about December 1, 2015, the defendant and Steinmann, acting on behalf of European Financial Institution 1, caused European Financial Institution 2 to transfer approximately $1,000,000 from Eaton to the bank account of a yacht company in Miami, Florida.

15. For these and other transactions, the defendant periodically sent, via email, to Amparan and others, spreadsheets that accounted for how the Eaton-Rantor Loan Scheme proceeds

were used. For instance, on or about September 22, 2015, the defendant sent an email to Amparan, copying Steinmann, with the subject line "NUMEROS RG[.]"

16. Attached to the email referenced in Paragraph 15 was a spreadsheet showing that 50 percent of the Eaton-Rantor Loan Scheme proceeds went to "BOLI[,]" referring to the "Bolichicos," which the defendant understood to include Convit, while the remaining 50 percent was distributed to Conspirator 7. The spreadsheet showed that Conspirator 7's portion was further divided between Conspirator 7 and "CHAMOS[,]" referring to the family members of Venezuelan Official 2. The spreadsheet reflected fees paid to European Financial Institution 2 in excess of €20 million.

17. In or around 2016 and in or around 2017, Urdaneta and Ledo were experiencing problems receiving their Eaton-Rantor Loan Scheme proceeds that had been transferred to the custody of the CS. Around the same time, to resolve these problems, the defendant, Amparan, Steinmann, and Hugo Gois ("Gois") met with Urdaneta separately on different occasions in Madrid, Spain, and in or around early 2017, Steinmann also met with Ledo in Madrid, Spain.

18. Steinmann, the defendant, and their co-conspirators knew that both Urdaneta and Ledo were previously Venezuelan government officials and were subject to greater "Know Your Customer" scrutiny from banks; however, they agreed to create financial mechanisms specifically designed to avoid such scrutiny and to facilitate Urdaneta and Ledo's receipt of the funds being held by the CS. Those funds were directly traceable to the Eaton-Rantor Loan Scheme proceeds.

19. For example, the defendant and Steinmann coordinated the opening of an account at European Financial Institution 2 for Ledo, and the defendant, Steinmann, Amparan, and another individual, using a jointly owned commercial real estate company in Spain, coordinated the receipt of Eaton-Rantor Loan Scheme proceeds on behalf of Urdaneta. From in or around 2016 through

in or around March 2024, the defendant earned a salary of approximately €3,000-€7,000 per month for his role in this real estate company. Of those amounts, the defendant personally obtained the Euro equivalent of approximately $386,513.29.

20.  In addition, as a result of the Eaton-Rantor Loan Scheme, European Financial Institution 2 paid European Financial Institution 1 significant fees. The defendant's portion of those fees totaled the Euro equivalent of approximately $3,738,208.90.

[INTENTIONALLY LEFT BLANK]

## CONCLUSION

21. During the course of the Eaton-Rantor Loan Scheme, the defendant understood that his co-conspirators were transferring into the United States the proceeds of loan contracts obtained through bribery and were conducting financial transactions in the United States, including in the Southern District of Florida, using the proceeds of the loan contracts obtained through bribery.

22. The defendant knew he was participating in an illegal bribery and money laundering conspiracy and that the funds he transacted, or sought to transact in, were the proceeds of criminal activity.

GLENN S. LEON
CHIEF, FRAUD SECTION
U.S. Department of Justice, Criminal Division

Date: 5/14/24

By: _____
PAUL A. HAYDEN
TRIAL ATTORNEY

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 5/14/24

By: _____
NALINA SOMBUNTHAM
ASSISTANT UNITED STATES ATTORNEY

Date: 5/14/24

_____
BRIAN H. BIEBER
ATTORNEY FOR DEFENDANT

Date: 5/14/24

_____
LUIS FERNANDO VUTEFF
DEFENDANT